plaintiff's claim.   W. R. Laney testified that Hutton told him the debt was due and would be paid.

We have examined the numerous exceptions and find no error in the rulings of the Court.   The exceptions not mentioned by us require no special discussion.

No error.

NEELEY HILL et al. v. B. F. LANE et al.

(Filed 2 December, 1908).

1. **Deeds and Conveyances—Proceedings for Division of Lands— Commissioners' Report — Original Papers — Burnt Records — Recording Report.**

When a paper purporting to be an original report of a division of lands, in correct form and signed by the several commissioners, under seal, but which has never been registered, is presented to the Clerk of the court after the court-house has been burned and the records destroyed, with an entry thereon shown to be in the handwriting of a deceased former clerk, that the commissioners made the report in open court, and that the report was confirmed and ordered to be recorded, it is the duty of the Clerk, after satisfying himself upon evidence that the report is the original one, and that the entry is in the handwriting of the former clerk, to have the report recorded, even against the objection of a party in interest, in the absence of suggestion of fraud or that the report was not genuine.

2. **Same—Certificate—Color of Title.**

When, after the records of the court have been destroyed by fire, a paper, appearing to be the original report of commissioners to divide lands, with an entry ordering registration made by a former clerk, and which has not before been registered, is recorded by the Clerk and registered, after having satisfied himself of its being the original and genuine, an allotment of a part of the land therein is color of title as to that tract, and a certified copy is competent evidence in an action involving that question.

3. **Deeds and Conveyances—Color of Title—Commissioners' Report —Recording—Presumption.**

When a certified copy of a report of commissioners to divide land is put in evidence as color of title, by a party in interest

claiming a part of the land therein described, it must be presumed, in the absence of proof to the contrary, that the paper was duly recorded in accordance with an order directing it.

4. **Deeds and Conveyances—Adverse Possession—Color of Title—Evidence—Nonsuit.**

When adverse possession of the land in question for more than seven years under a deed to a married-woman is shown as color of title, and an ouster and continuous adverse possession of a part of the land contained in the description is shown during her coverture, and it further appears that the husband was entitled as tenant by the courtesy, and held possession after her death, to within two years next preceding the time of trial, and that the plaintiffs, the heirs at law, have had possession since then, the evidence is sufficient to carry the case to the jury, and a judgment as of nonsuit upon the evidence was properly disallowed, when title out of the State has been admitted.

5. **Married Women—Husband and Wife—Tenant by the Courtesy—Heirs at Law—Color of Title—Statute of Limitations.**

The statute of limitations does not begin to run against a married woman, in adverse possession of lands under color for the required time, by ouster of a part thereof during her coverture, or, after her death, against her heirs at law during the continuous adverse possession of the husband as tenant by the courtesy.

ACTION tried before *W. R. Allen, J.,* and a jury, May Term, 1908, of GREENE.

This action was brought for the recovery of a part of a tract of land, known as Lot No. 1 in the division of the land of Henry Edwards, deceased. The plaintiffs introduced in evidence the report of the commissioners to divide said land, by which it appears that Lot No. 1, including the land in controversy, was allotted to Richard Edwards, the father of Susan Beaman. The plaintiffs are the heirs-at-law of Susan Beaman. At the end of the report of the commissioners is the following entry:

"North Carolina—Greene County.
    May Term, 1835.

Then was the foregoing report of commissioners made in open court, confirmed and ordered to be recorded.
        Attest:                    WILLIAM WILLIAMS, *Clerk.*"

HILL *v.* LANE.

The report was found among the papers of N. H. Beaman, the husband of Susan Beaman, and Richard Edwards, her father, and was delivered by N. A. Beaman, son of N. H. Beaman, to the Clerk of the Superior Court of Greene County, in March, 1908. The report is correct in form and signed by the several commissioners under their seals. The Clerk of the Superior Court, upon evidence adduced before him as to the handwriting of William Williams, Clerk of the County Court, the Clerk who signed the certificate as to the genuineness of the report, found as a fact that it is the original report, and thereupon ordered it filed and recorded as a proper record of his office, and further ordered it to be registered, all of which was afterwards done. The court-house of Greene County was destroyed by fire, in 1876, with all the records and papers of the Court and of the office of the Register of Deeds, and there is no record of the partition proceedings in the Clerk's or Register's office.

It appears in the body of the report that it was returned by the commissioners to the February Term, 1835, of the Court of Pleas and Quarter Sessions. It does not appear whether or not the testimony as to the genuineness of the report was taken after notice to the defendants. The report was offered by the plaintiffs as color of title, and it was admitted by the Court for that purpose only. Defendants excepted.

W. M. Caraway, a witness for the plaintiffs, testified: "I am sixty-six years old. Knew Susan C. Beaman. She was the daughter and only child of Richard Edwards, and was raised on the tract of land in controversy. I know the boundaries of Lot No. 1 in the division of the lands of Henry Edwards. These boundaries cover the land in dispute. The plaintiffs are the heirs-at-law of Susan C. Beaman, daughter of Richard Edwards. Susan C. Beaman has been dead about twenty years. She was married to N. H. Beaman. He has been dead about two years. N. H. Beaman was in posses-

sion of Lot No. 1 after the death of Susan C. Beaman. James Jones took possession of the land in dispute about fifty-two years ago. Susan C. Beaman was then a married woman."

(At this point, the defendants admitted that the title to the land in controversy was out of the State, and further admitted that Susan C. Beaman was in possession of the land in controversy from her childhood to her death).

N. A. Beaman, a witness for the plaintiffs, testified: "My mother has been dead about twenty-nine years, and she was about thirty-two years old when she died. After the death of my mother, my father was in possession of all of Lot No. 1, except the disputed part. He died in September, 1906. I am forty-two years old. My father and mother have been in possession of Lot No. 1 as long as I can recollect, except that James Jones was in possession of the disputed part when I first knew it. Jones sold to Faircloth. Faircloth went into possession of the disputed part, and died eight or ten years ago. Faircloth conveyed to Lane."

(It is admitted that Susan C. Beaman was in possession of the land in controversy during the whole of her life up to the time James Jones went into possession and that, since that time, Jones, Faircloth and Lane have been in possession of the land in controversy).

Plaintiffs rested, and thereupon the defendants moved to nonsuit the plaintiffs. The motion was overruled, and the defendants excepted. The jury returned a verdict for the plaintiffs. Defendants' motion for a new trial having been overruled, and a judgment entered upon the verdict, the defendants appealed.

*L. V. Morrill* and *C. B. Aycock* for plaintiffs.
*Wooten & Clark, Abernathy & Davis* and *Paul Frizzelle* for defendants.

WALKER, J., after stating the case: The Court below properly admitted in evidence the report of the commissioners

HILL *v.* LANE.

as color of title. This was not an attempt to restore a burnt
or lost record, but the report of the commissioners was a part
of the original record in the cause. It was itself an original
paper and it was not necessary to resort to parol or other
evidence, such as a certified copy extant, to prove the con-
tents of the original, as would be required in the case of a
lost or burnt record. When the Clerk was satisfied that the
record was an original paper belonging to his office and which
should be spread upon its records and registered, under the
order of the Court which appeared upon its face, it was not
only within his authority, but it was his duty to file and
record the paper. *Greenlee v. McDowell,* 39 N. C., 484;
*Harris v. McRea,* 26 N. C., 81; *Botelor v. State,* 21 Md.
(8 Gill & J.), 383; *State v. Morris,* 84 N. C., 757. In
*Greenlee v. McDowell, supra,* the Court says: "The plain-
tiff's allegation is that, upon the loss of the records of the
former suit, a copy of the original bill, properly certified by
the Clerk, was filed without and against his consent; and
that no copy has been served upon him. He further alleges,
that the amendments upon it, and the entries upon the record,
were made without his knowledge or consent. That the records
and papers had been lost or destroyed, is stated by the plain-
tiff; and, in that case, it cannot be doubted that the Court,
without or against the will of the plaintiff, had full power to
order a copy of the original bill to be filed. That the copy
filed was a correct one is not questioned." It must be pre-
sumed in the absence of any proof to the contrary, that the
Clerk duly recorded the report in his office and it was regis-
tered in accordance with the order of the Court. It is pro-
vided by the Revisal, sec. 328 (Code, sec. 56), that all orig-
inal papers, once admitted to record or registry, whereof the
record or registry is destroyed, may, on motion, be again
recorded or registered, on such proof as the Court shall re-
quire. But as the report was recorded by the Clerk, upon
satisfactory proof, and a duly certified copy was introduced

in evidence, it was competent, in the absence of any suggestion that the report was not genuine or had been forged. There was no such intimation, although it was open to attack by the defendants in the proper way. It had, on the contrary, every appearance of being the original report, duly certified by the Clerk of the County Court, to which it was returned, as having been confirmed and ordered to be recorded in his office and registered as required by the statute. It was color of title, as the Judge correctly held. *Bynum v. Thompson*, 25 N. C., 578; *Smith v. Tew*, 127 N. C., 299; *Lindsey v. Beaman*, 128 N. C., 189.

The motion to nonsuit was properly overruled. While the evidence is somewhat meagre, it was sufficient for the consideration of the jury and tended to show an adverse possession in Susan C. Beaman for more than seven years under color, and, also, that she was seized in deed during the coverture, so as to entitle her husband to an estate by the courtesy at her death. This estate for his life suspended the operation of the statute of limitations, as a bar to the plaintiffs, during its continuance. There was some uncertainty as to when James Jones took possession of the land, and there was evidence that, whenever it was, Susan C. Beaman was at the time a married woman, so that the statute did not run against her during her coverture. The charge of the Judge to the jury is not in the record, and we must assume that they were correctly instructed as to the law applicable to the case.

The parties having admitted that the title to the land was out of the State, and the jury having found, under sufficient evidence, that the plaintiffs and those under whom they claim, had acquired the title by adverse possession under color, and that the statute of limitations had not barred the plaintiffs' right of entry. There was no error in the judgment.

No error.